**CULLINAN ASSOCIATES,
INC., Appellant,**

v.

**George A. CLEMENTS, Appellee.**

**Civil Action No. 94–0819–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Feb. 17, 1995.

---

Howard J. Beck, Jr., Gentry, Locke, Rakes & Moore, Roanoke, VA, for Appellant.

Leon Patrick Ferrance, Key & Tatel, Roanoke, VA, for Appellee.

Evelyn K. Krippendorf, Roanoke, VA, Pro Se.

U.S. Trustee, Roanoke, VA, Pro Se.

## MEMORANDUM OPINION

KISER, Chief Judge.

This is an appeal from an order of the Bankruptcy Court, Judge H. Clyde Pearson, declining to deny appellee-debtor's discharge. The parties have fully briefed the issues raised on this appeal. The Court has heard argument from the parties. This matter is, therefore, ripe for decision. For the reasons stated below, the Bankruptcy Court's order will be vacated and remanded for further proceedings consistent with this opinion.

### I. Facts.

Appellant-creditor Cullinan Associates, Inc. ("Cullinan"), instituted an adversary proceeding to obtain a declaration that a debt appellee-debtor George A. Clements ("Clements") owed was nondischargeable. The complaint originally alleged four counts, two based upon 11 U.S.C.A. § 523 (West 1993) and two based upon 11 U.S.C.A. § 727 (West 1993). Cullinan chose not to proceed to trial on the two counts based upon section 523.

The debt at the center of the dispute arose from a state court judgment Cullinan obtained against Clements and George's, Inc. ("George's"), a corporation of which Clements was president and stockholder. The litigation resulted from a breach of a construction contract between the parties. Cullinan was hired to repair damage a fire had done to the premises of George's, a flower shop. In March 1992, the state court litigation was resolved. The state court entered a judgment in favor of Cullinan for $10,465.75 plus interest. Later, the same court awarded attorney's fees in the amount of $12,233.05.

On September 30, 1992, Clements filed a Chapter 7 bankruptcy petition. George's followed suit with its Chapter 7 petition on October 28, 1992. In the statement of affairs and schedules filed in the George's case, information regarding the company's cash position, checking accounts, and other items were not disclosed. Clements signed the statements.

Prior to the George's bankruptcy, Clements formed another corporation named Calla Lily, Inc. ("Calla"). Calla was a floral shop. Clements transferred inventory from George's to Calla. The transfer was for full consideration.

## II. Standard of Review.

 The district court reviews the bankruptcy court's conclusions of law *de novo.* *Resolution Trust Corp. v. C & R, L.C.,* 165 B.R. 593, 595 (W.D.Va.1994); *In re McCauley,* 105 B.R. 315, 318 n. 1 (E.D.Va.1989). *Cf.* Fed.R.Bankr.P. 8013. The district court is limited to considering only that evidence presented to the bankruptcy court and made a part of the record. *In re Bartlett,* 92 B.R. 142, 143 (E.D.N.C.1988). The district court has no power to take additional evidence in connection with its review of the bankruptcy court's action. If the facts are not sufficiently clear or complete to support review, the district court should remand the case for additional factual development. *In re Neis,* 723 F.2d 584, 589–90 (7th Cir.1983); *In re Ketaner,* 154 B.R. 467, 470 (E.D.Va.1993); *see generally Commercial Credit Corp. v. Reed,* 154 B.R. 471, 474–75 (E.D.Tex.1993).

## III. Intent to hinder, delay, or defraud.[1]

 Section 727(a)(2) grants the debtor a discharge unless

the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition.

Actual intent is required in order for the debtor's acts to fall under section 727(a)(2). Constructive intent does not suffice. *In re Woodfield,* 978 F.2d 516, 518 (9th Cir.1992); *In re Ford,* 53 B.R. 444, 449 (W.D.Va.1984), *aff'd,* 773 F.2d 52 (4th Cir.1985); 4 Lawrence P. King, et al., Collier on Bankruptcy

¶ 727.02[3], at 727–14 (15th ed.1994). However, in determining whether the actual intent existed, the circumstances surrounding the questioned transaction are appropriately considered. *Woodfield,* 978 F.2d at 518; 4 Collier on Bankruptcy ¶ 727.02[3], at 727–15. Indeed, certain "badges of fraud" will strongly suggest a purpose to defraud unless some other convincing evidence appears. *Woodfield,* 978 F.2d at 518.

The bankruptcy court held in this case that no intent to defraud existed. In so doing, the court relied upon four different factors. First, the court relied upon the full consideration that Calla paid George's for the inventory. Second, the court found probative the bankruptcy trustee's examination of the transactions and the trustee's decision not to join in Cullinan's adversary proceeding. Third, the court found that the transfers were made with full disclosure. Finally, added to the end of the opinion, the court placed reliance on Cullinan's decision to not proceed with its section 523 allegations. Cullinan argues that the court relied incorrectly, or was clearly erroneous in, its findings on each of these matters. Because I find that the bankruptcy court relied on some factors that it should not have, I will remand.

 I turn first to the issue of full consideration. Contrary to Cullinan's position, whether the transfers were made with full consideration is certainly probative evidence of Clements' actual intent to defraud. However, I do agree that other factors should have been considered. In light of the significant role the "badges of fraud" can play in determining fraudulent intent, *see id.,* the bankruptcy court should have addressed the numerous indicia of fraud in the record. For example, the transfers in question were made on the eve of bankruptcy; they were made between two corporations both controlled by Clements; they were made following a substantial judgment in a lawsuit. *See id.* (listing badges of fraud that should be considered).

---

1. Cullinan also argued for denial of discharge pursuant to section 727(a)(7). That provision addresses the same conduct as, *inter alia,* sections 723(a)(2) and (a)(4) where the debtor acts in connection with another case concerning an insider.

■ Furthermore, the bankruptcy court erred in not considering whether the debtor had an intent to delay or hinder his creditors. Section 727(a)(2) is plainly written in the disjunctive. The debtor may have an intent to "hinder, delay, *or* defraud." 11 U.S.C.A. § 727(a)(2) (emphasis added). "[A] careful reading indicates that intent to hinder or delay, even if not fraudulent, may be sufficient for a denial of discharge." 4 Collier on Bankruptcy ¶ 727.02[3] at 727–14; *see also In re Bowyer*, 916 F.2d 1056, 1059 (5th Cir. 1990) ("[T]he term 'defraud' does not subsume 'hinder or delay.' ").[2] The lower court erred when it failed to consider this possibility.

■■■ The court's reliance on the trustee's decision is similarly misplaced. While the depth of the trustee's examination is a factual matter subject only to clearly erroneous review, the lower court's decision to rely on this point is a matter of law subject to *de novo* review.[3] The right of the trustee to recover and the right of a creditor to recover are independent rights. The decision of one to pursue a statutory remedy is not probative evidence of the decision of the other. *See* 11 U.S.C.A. § 727(c)(1) (giving the trustee, a creditor, *or* the United States trustee the power to object to discharge under § 727(a)).[4]

■ Finally, the bankruptcy court's reliance on Cullinan abandoning its section 523 claims is also reversible error. Cullinan's

amended complaint focused, in counts one and two, on Clements' actions with respect to the contract for construction services. The facts in count one attempted to show, consistent with section 523(a)(2), that Clements obtained the construction debt through false pretenses, false representation or actual fraud or by the use of a false written statement. The facts in count two attempted to show that by withholding insurance proceeds allegedly promised to Cullinan, Clements willfully and maliciously caused injury to Cullinan and its property. These allegations are consistent with section 523(a)(6).

This examination of the amended complaint reveals the bankruptcy court's error. Cullinan's abandonment of section 523 claims reveals nothing more than it felt it could not prove the facts surrounding the construction contract events. It does not indicate, contrary to the bankruptcy court's decision, that Cullinan could not prove allegations in counts three and four that focused upon Clements' activities vis-a-vis the George's bankruptcy. The focus of the proof in each count is on a completely different time period.[5] In any event, Cullinan never indicated its reasons for dropping its section 523 claims.[6] To find support in Cullinan's decision on this silent record for the bankruptcy court's conclusions regarding section 727 is error.

## IV. False oaths.

■ Section 727(a)(4) precludes a discharge when "the debtor knowingly and

2. On rehearing, the Fifth Circuit decided that it had not given appropriate deference to the bankruptcy court's findings. *In re Bowyer*, 932 F.2d 1100, 1102 (5th Cir.1991). The court did not, however, change its conclusion that hinder and delay are separate elements. *Id.* Instead, the court determined that the creditor did not raise the issue and even if it had, the district court findings were sufficient to resolve the issue. *Id.*

3. It does not appear from the record that the bankruptcy court's decision was clearly erroneous. It knew what it ordered the trustee to do and it was in a better position to determine the extent of compliance of the trustee with the court's order.

4. It is also far from clear whether the trustee in *George's* Chapter 7 proceeding, who apparently did the investigation, would have the power to object to the discharge of the debtor in *Clements'* Chapter 7 proceeding. *See* 11 U.S.C. § 704(6)

("The trustee shall ... if advisable, oppose the discharge of the debtor.").

5. The only time period that overlaps is found in the allegations of paragraph 20 of the amended complaint. But in that situation, the actions alleged are different in nature from those alleged in counts one and two.

6. Indeed, rather than a capitulation, Cullinan may have thought it was going to play "hardball" with Clements. A discharge under section 523 only applies to the particular debt. *See* 11 U.S.C.A. § 523 (listing particular debts that cannot be discharged). However, if Cullinan was successful under section 727, Clements would not be entitled to his *general* discharge. 4 Collier on Bankruptcy ¶ 727.01[1] ("[T]he discharge under section 727 discharges the debtor from all debts...."). Thus, not only would he be open to the claim of Cullinan, but also to any other debts that may still exist.

fraudulently, in or in connection with the case (A) made a false oath or account...." "In order to be denied a discharge under this section, the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud." *Williamson v. Fireman's Fund Ins. Co. (In re Williamson),* 828 F.2d 249, 251 (4th Cir.1987). The false oath must relate to a material matter. *Id.* While the ultimate burden of proof by a preponderance of the evidence rests upon Cullinan, Clements does have a burden to provide satisfactory, explanatory evidence once Cullinan has established a prima-facie case for denial of a discharge. *Farouki v. Emirates Bank Int'l, Ltd. (In re Farouki),* 14 F.3d 244, 249 (4th Cir.1994). Importantly, reckless indifference to the truth of relevant statements suffices to prove the fraudulent intent *Williamson* requires. *See Boroff v. Tully (In re Tully),* 818 F.2d 106, 112 (1st Cir.1987); *Diorio v. Kreisler–Borg Constr. Co. (In re Diorio),* 407 F.2d 1330, 1331 (2d Cir.1969); *In re Johnson,* 139 B.R. 163, 166 (Bankr.E.D.Va.1992); 4 Collier on Bankruptcy ¶ 727.04[1]. *Cf. Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 305 (11th Cir. 1994) (addressing claim under § 523(a)(2)(B)).

The bankruptcy court reasoned that the debtor's schedules were prepared in advance of the filing date and thus changes may have occurred in the "lag time" between preparation and filing. Furthermore, the court relied upon debtor's testimony that he was "very confused" during the creditors meeting and thus the court discounted the testimony from that meeting. The court concluded that the debtor's testimony showed he did not willfully make a false oath with the intent to defraud.[7]

■■■■ The lower court's decision must be vacated on this point for two reasons. First, the court failed to consider whether reckless indifference to the truth of the many

statements existed. The evidence seems to suggest that Clements made a number of inaccuracies over a period of time. Such evidence would go a long way toward proving reckless indifference. *See, e.g., Williamson,* 828 F.2d at 252 (effect of three false oaths significant); *Johnson,* 139 B.R. at 170 (cumulative effect of falsehoods establishes fraudulent intent or reckless indifference); *In re Johnson,* 82 B.R. 801, 805–06 (Bankr. E.D.N.C.1988) (pattern of nondisclosure justifies finding of fraudulent intent). Second, the court's reliance on the "lag time" argument is also misplaced. On remand, the court should reconsider that reliance in light of, *inter alia,* (1) the record evidence that Clements *signed* the statements only a day before the filing; and (2) the testimony from the creditor's meeting.[8]

### V. Conclusion.

For the reasons stated above, the bankruptcy court's decision will be vacated. On remand, the bankruptcy court should reopen its hearing to receive additional evidence if necessary. The court should, at a minimum, afford the parties the opportunity for renewed briefing and oral argument in light of this opinion.

---

7. The bankruptcy court apparently also relied on Cullinan's abandonment of the § 523 claims. For the reasons discussed in the preceding section, I reject the court's reliance on this ground.

8. While the debtor may have been "confused" overall, the court should consider whether the

relevant statements of the debtor occurred during a "confusing" period of interrogation. As this is a determination rooted in the fact finding process, it is more appropriately left the bankruptcy court.