In re Lure Dean SPRIGGS, Debtor.

PRO FINANCE, INC., Appellant,

v.

Lure Dean SPRIGGS, Appellee.

BAP No. KS–97–078.
Bankruptcy No. 96–21791.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

April 16, 1998.

Submitted on the briefs: *

John H. Trader, Kansas City, MO, for Appellant.

Maurice B. Soltz of Soltz & Shankland, A.P.C., Kansas City, MO, for Appellee.

Before McFEELEY, Chief Judge, BOULDEN, and MATHESON, Bankruptcy Judges.

## OPINION

PER CURIAM.

Pro Finance, Inc. (Pro Finance) appeals an order of the United States Bankruptcy Court for the District of Kansas disallowing a portion of its proof of claim seeking the costs and fees incurred when it foreclosed upon the residence of Lure Dean Spriggs (Debtor) in violation of the automatic stay. In so ruling, the bankruptcy court concluded that equitable principles did not merit retroactively annulling the effect of the automatic stay or validating Pro Finance's postpetition foreclosure sale. For the reasons set forth below, we AFFIRM.

## I. *Background*

The Debtor executed a Trust Deed Note secured by a Deed of Trust on her residence in favor of Pro Finance. When the Debtor defaulted under the Trust Deed Note, Pro Finance was stayed from foreclosing on the property because the Debtor filed two successive Chapter 13 cases in the District of Missouri. After both of the Missouri bankruptcy cases were dismissed, Pro Finance

---

* After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is therefore ordered submitted without oral argument.

**910**

commenced foreclosure proceedings against the property. The Debtor thereafter filed a petition for relief under Chapter 13 in the District of Kansas, commencing the above-captioned case. The Debtor's schedules listed Pro Finance as a secured creditor at its correct mailing address.

Although accurately listed on the Debtor's matrix, Pro Finance alleges it never received the Notice of Commencement of Case in the Debtor's Kansas bankruptcy case, and thus it continued to foreclose on the Debtor's property postpetition. Pro Finance contacted the Debtor via first class mail on three different occasions to notify her that if she did not cure the default under the Trust Deed Note the property securing the Note would be sold at a foreclosure sale. In addition, notice of the foreclosure sale was allegedly published and posted at the Debtor's residence. The Debtor did not respond to any of the letters or notices. Pro Finance conducted the foreclosure sale as noticed, and it was the successful bidder. Several weeks later, Pro Finance recorded a Trustee's Deed on the property. Pro Finance claims that it was only after the foreclosure sale and the recording of its Trustee's Deed that it learned that the Debtor had filed a Chapter 13 case in the District of Kansas.

Pro Finance filed a proof of claim in the Debtor's case, asserting a secured claim in the total amount of $5,027.90. The schedule attached to Pro Finance's proof of claim states that the claim comprised amounts due under the Trust Deed Note at the time of foreclosure, totaling $2,497.71, as well as fees and costs incurred in conjunction with the postpetition foreclosure sale in the total amount of $2,550.19.

Approximately two months after it filed its proof of claim, Pro Finance filed a motion requesting that the bankruptcy court modify the automatic stay, and order that its postpetition foreclosure sale was proper and that its recorded Trustee's Deed was valid (Ratification Motion). Pro Finance argued that the automatic stay did not apply to the postpetition foreclosure sale because the Debtor had remained "stealthily silent" while Pro Finance unknowingly violated the automatic stay. The Debtor did not respond to the Ratification Motion. But, on the same day that Pro Finance filed the Ratification Motion, the Debtor filed an Objection to Pro Finance's proof of claim (Claim Objection), arguing that the portion of the claim seeking postpetition foreclosure fees and costs should be disallowed because they were incurred in violation of the automatic stay. In addition, the Debtor asserted that she was entitled to damages under § 362(h) due to Pro Finance's violation of the automatic stay. Pro Finance later responded to the Debtor's Claim Objection, stating that its postpetition foreclosure fees and costs were proper as they were allowed under its Deed of Trust and Trust Deed Note. Pro Finance also argued that the postpetition foreclosure sale was valid, incorporating by reference the arguments that it had made in its Ratification Motion, and summarily objected to the Debtor's request for damages under § 362(h).

At a pretrial scheduling conference on the Claim Objection, the bankruptcy court ordered the parties to file summary judgment pleadings by a fixed date. According to the docket sheet, the Debtor timely filed her motion for summary judgment, and Pro Finance filed a cross-motion for summary judgment (Cross–Motion).[1] In its Cross–Motion, Pro Finance did not address the Debtor's Claim Objection, but rather reasserted the arguments made in its Ratification Motion.

The bankruptcy court held a hearing on the summary judgment motions, stating that it was only considering the Claim Objection, apparently addressed in the Debtor's motion for summary judgment, not the Ratification Motion, addressed in Pro Finance's Cross–Motion. However, in disposing of the Claim Objection, which requested a determination as to the allowability of the fees and costs associated with the postpetition foreclosure sale, the bankruptcy court was required to determine the validity of the postpetition foreclosure sale. After hearing argument, the bankruptcy court ruled from the bench that: (1) the foreclosure sale was conducted

1. Although the Cross–Motion is part of our record on appeal, the Debtor's motion for summary judgment is not.

in violation of the stay and, therefore, was void; (2) equitable exceptions to the rule that an act in violation of the stay is void did not apply; (3) Pro Finance's fees and costs incurred in conjunction with the foreclosure sale were not allowable; and (4) the Debtor was not entitled to damages under § 362(h).

After the bankruptcy court made its findings of fact and conclusions of law on the record, Pro Finance filed a notice of appeal commencing this appeal, stating that it appeals "from the judgment of the bankruptcy court on its Cross–Motion for Summary Judgment." While the bankruptcy court did not definitively rule on Pro Finance's Cross–Motion, it is clear from the court's oral decision that it granted the Debtor's motion for summary judgment in part, as it disallowed Pro Finance's claim for foreclosure fees and costs; denied the Debtor's motion in part, as it disallowed the Debtor's request for damages under § 362(h); and denied Pro Finance's Cross–Motion. After Pro Finance filed its notice of appeal, the bankruptcy court executed an order, prepared by Debtor's counsel, which incorporated by reference its bench ruling (Bankruptcy Court Order).[2]

## II.  *Appellate Jurisdiction*

This Court, with the consent of the parties, has jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1). Neither party has opted to have this appeal heard by the United States District Court for the District of Kansas and, therefore, they have consented to our jurisdiction. *Id.* at § 158(c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001–1(d).

The Bankruptcy Court Order is appropriate for review as a "final" order under § 158(a)(1) because, although the procedural posture of this case raises issues of jurisdiction, the Bankruptcy Court Order ends the dispute between the parties on the merits. *See Quackenbush v. Allstate Ins. Co.,* 517

U.S. 706, 709–12, 116 S.Ct. 1712, 1718, 135 L.Ed.2d 1 (1996). Pro Finance is appealing the Bankruptcy Court Order which, based on the bench ruling incorporated therein, operated to deny its Cross–Motion for summary judgment. Orders denying summary judgment are typically not considered "final" judgments as required by § 158(a)(1). *See, e.g., Schmidt v. Farm Credit Servs.,* 977 F.2d 511, 513 n. 3 (10th Cir.1992); *Harris v. Beneficial Oklahoma, Inc. (In re Harris),* 209 B.R. 990, 992 (10th Cir. BAP 1997) (citing cases). However, since the Bankruptcy Court Order granted the Debtor's motion for summary judgment, litigation involving the Claim Objection has now ended on the merits, *see, e.g., In re Hatcher,* 208 B.R. 959 (10th Cir. BAP 1997) (order resolving claim dispute is a "final" order under § 158(a)(1)), *aff'd* 133 F.3d 932 (10th Cir.1998) (table), and it is appropriate to consider the denial of Pro Finance's Cross–Motion. *See Burlington Northern R.R. v. Huddleston,* 94 F.3d 1413, 1416 (10th Cir.1996).

As noted above, there is no dispositive order regarding the denial of Pro Finance's Cross–Motion, and therefore no separate judgment as required under Fed. R. Bankr.P. 7052 and 9014. However, the absence of a separate judgment does not affect the jurisdiction of this Court if the parties assume, as they have in this case, that a separate judgment exists. *See id.; Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384, 98 S.Ct. 1117, 1119–20, 55 L.Ed.2d 357 (1978).

Finally, Pro Finance's notice of appeal of the Bankruptcy Court Order was timely filed. Although Pro Finance filed its notice of appeal prior to the entry of the Bankruptcy Court Order, the notice of appeal is "treated as filed after ... entry [of that Order] and on the day thereof." Fed. R. Bankr.P. 8002(a).

## III.  *Standard of Review*

"[D]ecisions by judges are traditionally divided into three categories, denominated

---

2. The Bankruptcy Court Order prepared by Debtor's counsel incorrectly reflects the court's bench ruling. However, the inaccuracies in the Bankruptcy Court Order may be overlooked because the bankruptcy court added a provision to the Order incorporating by reference the findings of fact and conclusions of law that it made at the hearing, and the misstatements made in the Order are not dispositive. Thus, in reviewing the merits of this case on appeal, we rely on the findings of fact and conclusions of law stated in the bankruptcy court's bench ruling, not the Bankruptcy Court Order.

**912**

questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). In conducting a *de novo* review, we must make an independent determination of the issues and law, giving no special weight to the decision under review. *United States v. First City Nat'l Bank*, 386 U.S. 361, 368, 87 S.Ct. 1088, 1093, 18 L.Ed.2d 151 (1967); *Lilly v. Fieldstone*, 876 F.2d 857, 858 (10th Cir.1989). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948), *cited in Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

**IV.** *Discussion*

The bankruptcy court sustained the Debtor's Claim Objection, concluding that the portion of Pro Finance's proof of claim requesting fees and costs related to its postpetition foreclosure sale were not allowable. The court reasoned that the costs should not be allowed because: (1) the foreclosure sale was conducted in violation of the stay and, therefore, was void; and (2) equitable exceptions to the rule that an act in violation of the stay is void did not apply. Upon *de novo* review, we conclude that the bankruptcy court was correct.

The automatic stay clearly was applicable to Pro Finance's foreclosure action against the Debtor's residence, *see* 11 U.S.C. § 362(a)(1) & (3)-(6), and Pro Finance has not argued that an exception to the stay under § 362(b) applies. As such, the bankruptcy court determined the sale was void as a matter of law. *See, e.g., Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d

1020, 1022 (10th Cir.1994) (citing *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1940)); *Job v. Calder (In re Calder)*, 907 F.2d 953, 956 (10th Cir. 1990); *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372–73 (10th Cir.1990).

■ Pro Finance argues, however, that under equitable principles, including the Debtor's failure to respond to its foreclosure notices, the sale is not void.[3] Pro Finance points to *Calder*, where the Tenth Circuit stated, in relevant part, that:

[E]quitable principles may, in some circumstances, be applicable to claimed violations of the stay. The existing case law indicates that courts will apply equitable considerations at least where the creditor was without actual knowledge of a bankruptcy petition and the bankrupt's unreasonable behavior contributed to the creditor's plight. *See, e.g., In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976–77 (1st Cir. 1982) (debtor not entitled to protection where debtor remained "stealthily silent" while creditor obtained a default judgment and execution from a state court in violation of the automatic stay).

In our view, it would be inequitable to allow [the debtor] to claim any protections of the automatic stay ... to defeat the Jobs' state court judgment. The basic undisputed fact apparent from the record is that [the debtor] actively litigated the state court action and did not provide notice of the pending Chapter 13 proceeding until just before the state court was to enter a final judgement. [The debtor] must bear some responsibility for his unreasonable delay in asserting his rights under section 362(a). [The debtor's] only explanation, that he forgot, is not a legitimate excuse for his delay. To hold otherwise and permit the automatic stay provision to be used as a trump card played after an unfavorable result was reached in state court, would be inconsistent with the underlying purpose of the automatic stay....

907 F.2d at 956–57 (citation and footnote omitted).

**3.** Pro Finance also argues, for the first time on appeal, that the bankruptcy court erred in not applying § 549(c). This issue was not raised below and, therefore, we will not address it on appeal. *See, e.g., Rademacher v. Colorado Ass'n*

*of Soil Conservation Dists. Med. Benefit Plan*, 11 F.3d 1567, 1571 (10th Cir.1993); *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992).

■ The bankruptcy court recognized the equitable exception set forth in *Calder*, but held that it did not apply given the facts in this case. In particular, the court determined that while Pro Finance did not have notice of the case, the Debtor provided notice of the case in a "commonly accepted manner." Also, the Debtor's silence after Pro Finance commenced foreclosure was "not sufficiently unreasonable" because her bankruptcy case gave her reason to disregard Pro Finance's collection efforts, especially since she had properly given notice of the case. The bankruptcy court found that, unlike the debtor in *Calder*, the Debtor had disclosed her debt to Pro Finance in her bankruptcy schedules. Finally, the bankruptcy court ruled that the Debtor's silence during the postpetition foreclosure proceedings should have "raised a red flag on the part of Pro Finance's counsel, especially when he had knowledge that [the Debtor] had previously sought bankruptcy protection on two occasions." We conclude that these findings are not clearly erroneous,[4] and support the bankruptcy court's legal determination that the *Calder* exception does not apply in this case.

Furthermore, we find that this case is sufficiently distinct from *Calder* in other respects so as to support the bankruptcy court's conclusion that the equitable exception set forth therein does not apply. First, the Debtor is not, as was the debtor in *Calder*, a sophisticated bankruptcy attorney. Second, the debtor in *Calder* actively pursued state court litigation that he knew was in violation of the stay and then attempted to void the action at the eleventh hour, just as a judgment was to be entered against him. Such a scenario is far different from a debtor, such as the Debtor in this case, who, after properly serving notice of bankruptcy on a creditor, learns that the creditor intends to foreclose on her property and does nothing to prevent the action. In such a situation, a

debtor has no reason to be actively engaged in the foreclosure process and may rely on the protection afforded under § 362(a).

**V. *Conclusion***

For the reasons stated above, the Bankruptcy Court Order is AFFIRMED.

4. Pro Finance has not challenged the bankruptcy court's factual findings, except to argue that the Debtor's schedules did not fully disclose her debts because she did not list an unpaid real estate tax owed to Pro Finance under the Trust Deed Note. Based on the record, we cannot say that we have a definite and firm conviction that a mistake has been committed. Even if the Debtor failed to disclose the tax debt, the bankruptcy court's finding is not incorrect in any material way. Pro Finance also contends that the bankruptcy court's finding that the Debtor's silence should have raised a red flag that she had filed bankruptcy is clearly erroneous and that the opposite inference is reasonable. We do not believe that the inference drawn by the bankruptcy court is clearly erroneous.