In re John Luft RENNER, Debtor.

**Henry Schofield NOBLE, Trustee Travelers Indemnity Company, Plaintiffs,**

v.

**John Luft RENNER, Defendant.**

Bankruptcy No. 83–A–1450.
Adv. No. 84–0102A.

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Aug. 17, 1984.

Henry Noble, Gaithersburg, Md., trustee of the estate.

Richard Kremen, Baltimore, Md., for Travelers Indemnity ·Company.

John Luft Renner, pro se.

MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This matter is before the court for hearing upon a complaint filed by Henry Schofield Noble, Trustee, and Travelers Indemnity Company, plaintiffs, objecting to the discharge of the debtor, John Luft Renner.

The plaintiffs proceed under 11 U.S.C. § 727(a)(2), § 727(a)(3), § 727(a)(4)(A), and § 727(a)(4)(D). The court will limit its discussion to the counts involving § 727(a)(2) and § 727(a)(4)(A) that provide:

§ 727. *Discharge*

(a) The court shall grant the debtor a discharge, unless—

\*     \*     \*     \*     \*     \*

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

\*     \*     \*     \*     \*     \*

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

The plaintiffs contend that the debtor failed to provide any information in his schedules concerning a certain Prudential Insurance Company policy in the face amount of $10,000, with a cash value of $3,678, and that the debtor also failed to

disclose his 50% interest held with one Cecil Sebold in 30 acres of surface land and 60 acres of mineral rights located in Garrett County, Maryland. Debtor's answer to the complaint pleaded that he "had instructed his attorney [Charles Nathan, now deceased] in 1975 to deed his one-half interest to his daughter, Lindsay Renner and at all times had thought that this had been accomplished." In addition, debtor's counsel pleaded that there was no false oath or account that was knowingly made and that the omission was inadvertent.

The evidence was limited to the testimony of the debtor and Mr. Sebold and various exhibits, including answers to interrogatories in aid of execution filed by debtor, Law No. 3432, in the Circuit Court for Garrett County, Maryland. Debtor's schedules did not disclose the ownership interest in either the Garrett County property or the insurance policy. At no time did the debtor file amended schedules reflecting these assets. The issue before the court is whether this omission of assets amounts to a false oath made knowingly and fraudulently in connection with this case.[1] The court concludes that it does.

The court does not believe Mr. Renner's claim that the omission was inadvertent. The debtor scheduled every asset and "inadvertently" omitted the only assets that he held free and clear of any claims. The honest debtor is required to read schedules carefully. The story concerning debtor's instructions to his former attorney, Mr. Nathan, is a contrivance. Furthermore, these instructions were given in order to remove these assets from the claims of creditors. Debtor's business ventures were going bad, and he was afraid the land would be taken from him. Mr. Renner testified that it was for these reasons that he had contacted Mr. Nathan.

Notwithstanding the claim that debtor "thought" Mr. Nathan had followed the instructions, both debtor and his partner, Mr. Sebold, testified that they received tax bills with debtor's name on the bill. The assessment was some $4,480, and Mr. Renner paid half of the taxes, which for the current year were $129.47. This statement was material in that both debtor and Mr. Sebold offered that the property was worth at least $2,500. Moreover, since the time that Mr. Renner had allegedly deeded the property to his daughter, 92 acres were condemned by the federal government, and Messrs. Renner and Sebold received over $100 per acre. Debtor kept half the proceeds. He never felt it necessary to tell anyone that he had turned his interest in the property over to his daughter. His daughter did not testify. The conclusion is that in fact the assets were not turned over to anyone.

The testimony presented leads to the conclusion that the debtor willfully concealed ownership of the insurance policy and the Garrett County land. He did so in an attempt to hide his only unencumbered assets from the trustee and his creditors. His oath to the schedules which omitted these assets was a false oath.[2]

1. At trial, the trustee mentioned that he had inquired about insurance policies during the debtor's § 341 hearing and that the debtor answered in the negative. The trustee presented no testimony as to this nor did he present a transcript of the § 341 hearing. Counsel for Travelers presented all evidence at trial. Counsel for the trustee did not take an active part in the plaintiffs' presentation.

2. *See In re Diorio,* 407 F.2d 1330, 1331 (2d Cir.1969):

Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt, cf. United States v. Stone, 282 F.2d 547, 553 (2 Cir.1960).

Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth, which is the kindest attitude that can be taken toward Diorio's affidavit, is the equivalent of fraud. There was here no such proof of circumstances extenuating the making of false statements as in *In re Tabibian,* 289 F.2d 793, 796–797 (2 Cir.1961), or *Avallone v. Gross,* 309 F.2d 60 (2 Cir.1962).

*See also, In re Kaiser,* 722 F.2d 1574, 1583 n. 4 (2d Cir.1983).

**416**

Debtor offered no satisfactory explanation of the false oath to his schedules which omitted the assets described. This situation is governed by the rule articulated by Judge Campbell, speaking for the court:

> ... *once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged.* Shanberg v. Saltzman, 69 F.2d 262 (1st Cir.1934). *See also* American National Bank v. Rainquet, 323 F.2d 881 (10th Cir.1963). *The trier of fact may rely upon reasonable inferences as well as direct evidence. Thus, the trier may infer fraudulent intent from an unexplained false statement. See* In the Matter of Kaufhold 256 F.2d 181 (3d Cir.1958); 1A J. Moore & J. Mulder, Collier On Bankruptcy ¶ 14.25, at 1336 (King ed. 1974). (Emphasis added.)

*In re Mascolo,* 505 F.2d 274, 276 (1st Cir. 1974). *See also, In re Mazzola,* 23 B.R. 263, 264–65 (D.Mass.1981) *remanding; In re Mazzola,* 4 B.R. 179, 2 CBC 2nd 242 (BC Mass.1980); *In re Gullifer,* 14 B.R. 183 (BC Me.1981).

An order will be entered denying debtor's discharge.